## CHANEY v. HUTCHES et al.

### No. 2040.

Court of Appeal of Louisiana. First Circuit.

Dec. 20, 1939.

Taylor, Porter & Brooks, of Baton Rouge, for appellants.

Starring & Walsh, of Baton Rouge, for appellee.

Le BLANC, Judge.

This is a suit for damages for personal injuries growing out of an intersectional collision between two automobiles which

occurred in the City of Baton Rouge, on August 6, 1937, at about eleven o'clock in the morning. The plaintiff, Mrs. Franklin Butler Chaney, was riding as a guest in the car of R. P. Hutches which was being driven by him at the time, going north on St. Joseph Street. That car collided in the intersection with a car owned and driven by J. M. Gilman going west on America Street.

The plaintiff, a lady some sixty years of age at the time, was seated in the back of the Hutches car with her granddaughter, a child of her daughter, Mrs. C. J. LeBlanc, who was seated on the front seat with the driver of the car, R. P. Hutches. She sues both Hutches and Gilman and the latter's public liability insurer, American Indemnity Company, alleging negligence on the part of the drivers of both cars. She charges Hutches with driving at an excessive rate of speed, in not slowing down for the intersection and in failing to keep a proper lookout. Gilman is charged with driving at an excessive speed, in not reducing his speed and giving warning on approaching the intersection even though his view of the corner on the southeast was obstructed by an ice truck parked there, in not keeping a proper lookout and in not having respected Hutches' right of preemption of the intersection by having entered it first. The demand is for the sum of $15,000 and the additional amount of $239.-62 for medical expenses. Plaintiff suffered a broken clavicle and claims that as a result of her injury and treatment incident thereto she had two attacks of pneumonia during one of which her life was despaired of for several days.

Hutches made no defense whatever but appeared solely as a witness on behalf of the plaintiff at the trial of the case. Gilman and his insurer answered denying any negligence and claiming that the accident was caused solely by the negligence of Hutches in driving at a speed in violation of the City Ordinance of the City of Baton Rouge, in not respecting Gilman's superior right on a right of way street and his preemption of the intersection and finally, in failing to make any effort at all to avoid the collision. In the alternative they plead contributory negligence on the part of the plaintiff in having failed to protest at the manner in which Hutches was driving the car and his failure to take proper precaution in entering the intersection.

The disputed facts in the case are with regard to the speed at which the respective cars were going when they entered the intersection and which of the two entered the intersection first. Naturally these are the important points to be considered in fixing the blame on either one or the other, or on both of the drivers.

Both America and St. Joseph Street are 23 ft. wide. St. Joseph Street runs due north and south and America St. due east and west. The center of the intersection between the two streets may be said to be identified by a manhole right at that point. It is not disputed that there was an ice truck, some say an ice wagon, parked on the southeast corner of the intersection facing west, the front end projecting a few feet into St. Joseph St. This parked truck admittedly obstructed the view at that corner. There is no dispute either that the cars collided about one foot north of the manhole, nor is there any dispute that the Hutches car was struck on the right rear end (fender, running board and door) and that the Gilman car struck the Hutches car with the left end of its front bumper and fender. Further, there is no dispute that after the impact the Hutches car continued north some 25 ft., finally turning over on the west side of St. Joseph St. just north of the intersecting line of America St., and the Gilman car moved about two paces or 6 ft., stopping just west of the manhole in the center of the intersection.

From a reading of the record we can almost sense a deliberate attempt on the part of the plaintiff and the defendant Hutches to pin the entire blame for the accident on the defendant Gilman. The district judge held that he was solely responsible and awarded judgment against him and his insurer, in solido, for the sum of $4,489.62, of which amount $750 is for pain and suffering, $3,500 for physical injuries and permanent disability and $239.62 for expenses. From a judgment so decreeing, these defendants have appealed. Plaintiff has answered the appeal asking for an increase in the amount of the award.

The drivers of the respective cars differ in their version with regard to the speed at which each was driving and which one entered the intersection first, but our reaction to the testimony is that they were both going at about the same rate of speed, approximately 25 miles per hour, and that they both entered the intersection approximately at the same time. America Street has the right of way over St. Joseph St. and that being so, under the law, under

ordinary conditions, Gilman had a superior right to which Hutches had to yield unless by having entered ahead of him he had pre-empted the intersection. We conclude that they both entered the intersection at about the same time for the following reasons: Both streets, as we have already indicated, are of the same width, that is, 23 ft. each. Hutches says he was already in the intersection when he noticed the Gilman car about to enter and that to avoid a collision as best he could he put on speed to pass ahead of Gilman's car. In spite of this added speed which he gave to his car, however, the impact took place only a foot or so west of the manhole which is in the center of the intersection. True, the Gilman car struck the Hutches car on the rear end and naturally the front of the Hutches car had passed the center point of the intersection but this, as we view it, is accounted for by the added speed which Hutches says he put his car to in order to pass ahead of the Gilman car.

Assuming that they were travelling at approximately the same rate of speed, as we think the testimony bears out, they both were covering the same distance in a given time and it is obvious that if Hutches, as he says, increased his speed when he saw the Gilman car, he covered the distance of 11½ ft. which is one-half the width of St. Joseph St. in the intersection, faster than Gilman covered that same distance in America St. The respective distances which the cars travelled after the impact would indicate that the Hutches car must have been going faster in the intersection than the Gilman car since it travelled 25 ft. beyond the point of impact, then rolling over on its side, as against the 6 or 8 ft. which the Gilman car travelled.

With regard to this important point as to which of the two cars entered the intersection first, we find the testimony of the witnesses very unsatisfactory. Each driver claims that he had entered first and Mrs. LeBlanc, the only other witness on this point, does not give much assistance to the court in solving the dispute between them. She is rather indefinite in her testimony and frankly admits at the very end of her cross-examination that she is not positive whether the Gilman car had or had not entered St. Joseph Street when she first saw it at the time when they were in the intersection. In the absence of any better and more convincing testimony on this point we resort to the physical facts already referred to in concluding that both of the cars entered the intersection approximately at the same time.

The district judge concluded that the Hutches car had entered the intersection first and had pre-empted it, thus obtaining the advantage over the Gilman car in going across. That is the ground on which he held Hutches to be free of any negligence. We of course are unable to agree with him on this point and are of the opinion, under the facts presented, that he was guilty of equal, if not greater negligence, than Gilman. He was negligent in approaching the intersection at a right of way street, when he was on the less favored street, at a too rapid rate of speed, and in not keeping a proper lookout for traffic on the right of way street approaching the intersection from his right, and this, especially in view of the obstruction on the corner of the intersection to traffic coming from that direction.

It is however impossible to hold the defendant Gilman free of any blame whatever for the accident. His presence on the right of way street gave him some advantage under the law but in view of the presence of the parked ice truck on the southeast corner of the intersection which obstructed his view entirely, as he admits, the law as we further view it, imposed upon him a greater obligation and duty of care and precaution than he seems to have taken. Blashfield's Cyclopedia of Automobile Law, Permanent Edition, Vol. 2, page 237, § 1041, under the title: "Duty at Intersection Effected by Obstruction of View" has this to say: "Where the view of an intersecting road by a motorist approaching it is obscured, he must use special caution in making such approach. A driver approaching an intersecting street or highway, a view along which is obstructed, should have his machine under such control that it can be promptly stopped if a collision with a vehicle coming on such street or highway is imminent. If a motorist, with his view thus obscured, proceeds toward the intersecting road at such speed as prevents his stopping in order to avoid a car coming on such crossroad, or at least to veer out of his path, he is negligent * * *." It might be urged that this provision applies where both drivers are on streets having equal rights of way, but a further provision at page 239 apparently covers a case such as we have here where one of the drivers is on the favored street.

That provision reads as follows: "A motorist, approaching an intersection, whose view is thus obstructed, should have his car under such control without regard to the question of the statutory priority of right of way, and hence statutes or ordinances providing for or designating through ways or streets do not ordinarily modify requirements regarding speed in approaching obstructed intersections. *The existence of temporary obstructions to view of short duration may give rise to a duty to stop,* but there is no duty to stop imposed by the presence of permanent obstructions hindering or preventing observation of the cross street." The italicized part of this last provision which we have emphasized, seems to us to be peculiarly applicable in the present case where the obstruction, a parked ice truck, was purely a temporary one. Finally, the text further provides that: "A driver of an automobile approaching an intersecting street, where the view is obstructed, is negligent in looking straight ahead, without keeping a lookout for cars on the intersecting street. He must, moreover, in order to discharge the obligation of care required of him, continue to look for approaching vehicles or cars on the intersecting street." In construing Gilman's testimony we are bound to conclude that he was negligent in this last respect because he admits himself that he could not see to his left because of the obstruction created by the parked ice truck, that he continued into the intersection at the same rate of speed after he had slowed down upon entering it and that he did not see the other car until it was right on him, too close, as he further admits, for him to stop his car to avoid striking it. If it be said that his duty as imposed by one of the provisions which we have quoted was to stop entirely because the obstruction was a temporary one is perhaps too strict, at least it was his duty as indicated in the other provisions, to have had his car under such control as to stop it instantly in case he was met with a situation of imminent danger, such as in fact presented itself to him.

In the case of Lagarde et ux. v. Liberty Shop Ltd., Inc., 18 La.App. 573, 139 So. 67, the Court of Appeal for the Parish of Orleans had under consideration a case involving a collision at an intersection at which there was a blind crossing and it affirmed the judgment of the lower court which had dismissed both the main demand of the plaintiff and the reconventional de-mand of the defendant on the ground that both drivers of the vehicles were at fault. It held them both negligent in having failed "to stop or slacken their speed before entering the intersection, and neither saw the other until just before the impact." The fact that there was an obstruction which made it difficult for the drivers approaching the intersection at right angles to see each other, led the court to conclude that such condition necessitated "the exercise of care commensurate with the danger involved." In Poulan v. Deas, 18 La.App. 256, 138 So. 230, the Court of Appeal for the Second Circuit dismissed the suit of a plaintiff who was on a favored street because on entering the intersection he had failed to take the extra precaution required on his part in view of the obstruction created by the presence of a number of parked cars on both sides of the street.

 Inasmuch as we have concluded that the defendant Gilman was negligent, it becomes necessary for us to consider the plea of contributory negligence filed by them against the plaintiff Mrs. Chaney. This plea we believe can be disposed of by stating that there is no testimony to indicate that the situation was such at the moment of the accident as to call for a protest on the part of Mrs. Chaney at the manner in which Hutches was driving. She was seated on the back seat of the car with her grandchild and did not have the same opportunity of observing the parked ice truck which created the danger at the intersection as had Hutches and Mrs. LeBlanc who were on the front seat. As far as the record shows there was nothing for her to apprehend in the way of danger until the two cars were almost ready to collide with each other and any protest at that time would have been of no avail in preventing the accident. Besides, we believe the law to be rather well settled now that a guest, especially one seated on the back seat of an automobile, has the right to rely, to a reasonable extent, on the care and proper management of the car by the one who is driving it. Delaune v. Breaux, 174 La. 43, 139 So. 753.

 Whilst we express our disagreement with the district judge on the question of Hutches' negligence, in the condition in which the record appears, he cannot be cast in damages as a joint tort-feasor. The case as to him has never been put at issue. Plaintiff has not even moved for a default against him and the only part he has taken,

as stated before, was to appear as a witness on behalf of the plaintiff. Yet, as appears from our consideration of the testimony we doubt whether his negligence was not greater than that of the co-defendant Gilman. All of this is what prompted us to say that there seems to have been a studied effort to saddle the whole blame on the defendant Gilman and hold him and his indemnitor liable for the entire amount of the damage. Under our law there can be no contribution exacted from Hutches, the joint tort-feasor, until, like Gilman, he has been cast in a judgment. Aetna Life Insurance Co. v. De Jean et al., 185 La. 1074, 171 So. 450. Further action against him in that direction is left entirely to the wishes of the plaintiff and from present indications it seems doubtful that there will be any taken.

On the amount of the award the plaintiff is entitled to, we find ourselves unable to agree with the district judge with respect to the amount allowed by him for physical injuries and permanent disability. Plaintiff sustained a fracture of the clavicle, commonly known as the collar bone. The alignment in healing was good but she was left with some impairment in the use of her left arm. We think, however, from the medical testimony, that the advice given her to limit and restrict her household duties somewhat was induced to some extent by some organic condition which she had before her injury. We believe that an award of $1,500 for the injury and resulting disability is reasonable. We are not inclined to change the amount awarded her for pain and suffering and of course she is also entitled to recover the expenses incidental to her treatment. All told therefore plaintiff should recover the sum of $2,489.62.

For the reasons stated it is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount of the award from the sum of $4,489.62 to the sum of $2,489.62, and that as thus amended it be affirmed.